84 N.J. Super. 265 (1964)
201 A.2d 741
WILLIAM D. NELSON, PLAINTIFF-APPELLANT, AND RAYMOND WARING AND LILLIAN WARING, PLAINTIFFS,
v.
SOUTH BRUNSWICK PLANNING BOARD, AN ENTITY OF SOUTH BRUNSWICK TOWNSHIP CREATED BL LAW; THE TOWNSHIP OF SOUTH BRUNSWICK IN THE COUNTY OF MIDDLESEX, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, AND YENOM CORP., INC., A NEW JERSEY CORPORATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 8, 1964.
Decided June 23, 1964.
*268 Before Judges CONFORD, FREUND and SULLIVAN.
Mr. Richard F. Plechner argued the cause for appellant.
Mr. David M. Greene argued the cause for respondent South Brunswick Planning Board.
Mr. Joseph A. Weisman argued the cause for respondent Yenom Corporation, Inc. (Mr. Irwin I. Kimmelman, on the brief; Messrs. Hannoch, Weisman, Myers, Stern & Besser, attorneys).
Mr. Irving J. Verosloff submitted a brief on behalf of respondent The Township of South Brunswick.
The opinion of the court was delivered by FREUND, J.A.D.
Appellant and two others, all taxpayers, property owners and citizens of the Township of South Brunswick, brought an action in lieu of prerogative writs seeking to set aside the planning board's grant of tentative and final approval of Yenom Corporation's amended plan for a subdivision, and to enjoin the planning board and township committee from granting approval of that or similar plans. Plaintiffs also sought a declaration that South Brunswick's "cluster" zoning ordinance, No. 19-62, could not apply to Yenom's amended subdivision plan. Only appellant now challenges the judgment dismissing the complaint with prejudice.
The cluster zoning ordinance was adopted October 2, 1962. It provided that subdivision lots could, at the request of a *269 subdivider and in the discretion of the planning board, be reduced from the otherwise prevailing minimum lot sizes, provided that the subdivider donated to the township certain quantities of land for public uses, and provided that other requirements were met. This ordinance survived a direct constitutional attack in Chrinko v. So. Brunswick Tp. Planning Board, 77 N.J. Super. 594 (Law Div. 1963). Appellant was one of several plaintiffs in that action. Although those plaintiffs filed a notice of appeal and received an extension of time in which to file a brief and appendix, the appeal was eventually withdrawn.
Certain facts which occurred prior to the adoption of the cluster zoning ordinance must be outlined for a complete understanding of this case. On December 8, 1959 the planning board granted, subject to certain conditions not here relevant, tentative approval of a subdivision plan submitted by Yenom Corporation, a land developer, for a tract in South Brunswick known as "Brunswick Acres." This tract is located in an area designated as an R20 zone. The plan called for 526 building lots with a minimum lot size of 13,500 square feet. At this time the R20 zoning ordinance provided for minimum lot sizes of 20,000 square feet, with the exception that lots could be reduced to 13,500 square feet where sewer and water utilities were available.
The Township of South Brunswick has provided that its planning board shall be a "strong board," i.e., decisions concerning the grant or denial of tentative and final approval of subdivision plans are in themselves final, and not mere recommendations requiring the approval of the governing body of the township. See N.J.S.A. 40:55-1.14. Nevertheless, a party aggrieved by action of the planning board may appeal to the governing body within ten days after the date of the action complained of, and the governing body may, after a hearing, affirm or reverse the action of the planning board. N.J.S.A. 40:55-1.19.
On May 27, 1960 the township committee amended the R20 zoning ordinance so as to eliminate the 13,500 square *270 foot exception and require that all lots within that zone have a minimum of 20,000 square feet.
On October 2, 1962 the township committee adopted the cluster zoning ordinance referred to above, which provided, inter alia, that if the tract to be subdivided were located in a zone requiring a minimum lot size of 20,000 square feet or less, the developer could reduce the minimum lot size requirement by 20% and the minimum frontage requirement by 10%, provided he "donate, exclusive of open drainage water courses, 20% of the tract to the Township"; if the tract to be subdivided were located in a zone which required a minimum lot size in excess of 20,000 square feet, the developer could reduce the minimum lot size requirement by 30% and the minimum frontage requirement by 20%, provided he "donate, exclusive of open drainage water courses, 30% of the tract to the Township." A condition of any such plan is that "the resulting net lot density of the area to be subdivided shall be no greater than the net lot density of the said area without regard to the provisions of [the] Ordinance." See Chrinko v. So. Brunswick Tp. Planning Board, supra, 77 N.J. Super., at pp. 599-600.
N.J.S.A. 40:55-1.18 provides, in part, that where a land developer secures tentative approval of a subdivision plan, "the general terms and conditions upon which the tentative approval was granted will not be changed" for a period of three years from the date of the tentative approval. Minimum lot sizes provided for in a subdivision plan are among the "general terms and conditions" upon which tentative approval is granted. Hilton Acres v. Klein, 35 N.J. 570, 577-8 (1961). For three years from December 8, 1959, therefore, Yenom's 13,500 square foot minimum lot size was immunized from the May 27, 1960 zoning ordinance amendment which provided that the minimum lot size in the R20 zone must, without exception, be 20,000 square feet.
On November 27, 1962 Yenom submitted an amended plan for Brunswick Acres, calling for minimum lot sizes of 10,800 square feet, i.e., the "guaranteed" minimum of 13,500 square *271 feet less the 20% reduction allowed by the cluster zoning ordinance. The planning board granted approval of this amended plan, subject to the fulfillment of certain conditions, effective December 3, 1962. Public notice of the board's resolution regarding this approval was published the following day. No appeal from this determination was taken to the governing body, as provided in N.J.S.A. 40:55-1.19.
On December 7, 1962 Yenom submitted an application for final approval of its amended plan. Because the validity of the cluster zoning ordinance was then being litigated, suit having been instituted in October 1962, Yenom also submitted an application for final approval of the original plan which had been approved by the planning board in December 1959, this plan to be effective in the event of disapproval of the amended plan or judicial invalidation of the cluster zoning ordinance. The validity of that ordinance was upheld in the Superior Court, Law Division, on January 4, 1963, and judgment was entered in favor of the planning board and the township Committee on January 18. Chrinko v. So. Brunswick Tp. Planning Board, supra. As noted above, the appeal sought to be taken from this decision was later voluntarily dismissed.
On April 6, 1963 the planning board granted final approval to Yenom's amended subdivision plan for Brunswick Acres. On April 12, 1963 the plaintiffs who commenced the present action appealed from the planning board's grant of final approval to the township committee, pursuant to N.J.S.A. 40:55-1.19. On May 7, 1963 a public meeting was held by the township committee to consider the appeal. The committee upheld the planning board's grant of final approval of Yenom's amended plan. Notice of this action was published on May 10, 1963. Plaintiffs commenced the instant suit in the Superior Court, Law Division, on June 20, 1963.
The proceedings in the Law Division consisted of oral argument supported by submitted depositions and exhibits and stipulated facts. Judge Furman, who had decided Chrinko, dismissed the complaint, stating that "the final approval *272 granted by the municipality in this case is in accordance with the law, is not in violation of any statute, is in furtherance of the legislative purposes of planning and zoning, is specifically in conformity with the intention of South Brunswick Township in the enactment of the cluster zoning ordinance, is not discriminatory or in any other way a violation of equal protection of the law, and therefore, should be sustained."
Appellant raises but one point on this appeal: that the adoption of the cluster zoning ordinance and "the action of the municipality in approving the amended subdivision application" were "discriminatory and hence unconstitutional," in that the result is "for the purpose of benefiting unfairly a particular developer," i.e., Yenom. Respondents, in addition to arguing the reverse of this proposition, contend that the complaint was filed out of time, that the issues argued below and here were already settled by the decision in the Chrinko case, and that appellant has no standing to raise the constitutional question. Unfortunately, appellant did not attempt to meet these important issues by filing a reply brief.
We turn first to the question of the timeliness of this suit. The plaintiffs commenced their action in lieu of prerogative writs on June 20, 1963, 44 days after the refusal by the township committee to set aside the planning board's granting of final approval to Yenom for its amended subdivision plan.
R.R. 4:88-15 provides in part as follows:
"(a) No proceedings for review, hearing and relief in lieu of prerogative writs shall be commenced, unless it shall be commenced within 45 days of the accrual of the right to such review, hearing or relief, except as provided in paragraph (b) of this rule, and except as provided in Rule 1:3-1.
(b) No proceeding in lieu of prerogative writ shall be commenced.

* * * * * * * *
(3) to review any determination of a planning board * * * or any resolution by the governing body * * * of a municipality approving or disapproving a recommendation made by the planning board * * * after 45 days from the publication of a notice once in the official newspaper of the municipality or a newspaper of general circulation in the municipality * * *.

* * * * * * * *
*273 (c) Where it is manifest that the interests of justice require, the court may enlarge the period of time provided for in paragraph (a) or (b) of this rule." (Emphasis added)
Whether appellant's right to review the decision of the township committee be deemed to have accrued as of May 7 (the announcement of the approval) or May 10 (the publication of the notice thereof) it is clear that the instant suit was filed within 45 days therefrom. And, in fact, it is the action of the township committee in upholding the planning board's grant of final approval which appellant now contends was discriminatory and violative of equal protection of the laws. Respondents argue, however, that appellant's right to review should properly be deemed to fall within R.R. 4:88-15(b) (3), and that the 45-day period should begin running from the publication of the notice of the granting of tentative approval. We agree.
The general rule regarding the time limit for the commencement of actions in lieu of prerogative writs is stated in R.R. 4:88-15(a) to be 45 days from "the accrual of the right to such review, hearing or relief * * *." We do not read section (b) as providing exceptions thereto in the sense that the concept of timeliness measured by the accrual of the right to relief is replaced by other indicia of "ripeness." The fact that 45 days is retained as the measuring period in only one of the 12 "exceptions" in (b) indicates that that section was promulgated because of varying fact situations which had to be provided for, not because there was an intent to have exceptions to the normal concept of the time from which a limitations period should begin to run. Indeed, the points from which the varying time periods stated in (b) (1) through (12) begin to run are all substantially "accrual times."
Stating the publication date as the time from which the 45-day period begins to run in (b) (3) was intended to provide a point of time which could be ascertained with convenience and certainty. There is no indication of an intention to provide that in those cases falling within (b) (3) the time *274 when a right to relief accrued was irrelevant. In view of this we read the words "any determination" in (b)(3) to mean, in effect, any determination which may fairly be deemed to give rise to a right to review and relief. Cf. Riedel v. Sheeran, 73 N.J. Super. 105, 112-14 (Law Div. 1962).
In the instant case notice of the tentative approval of Yenom's amended subdivision plan as granted by the planning board was published on December 4, 1962. The instant suit was filed more than six months later. Respondents point out that in this time plans were made and steps were taken by them in reliance upon that approval. The granting of tentative approval, whether it be by a "strong" planning board or by a governing body's approval of a "weak" board's recommendation, is the most important step in the subdivision regulation process. Levin v. Livingston Tp., 35 N.J. 500, 512 (1961). Final approval of the amended subdivision plan was "a clearly forseeable consequence" of the granting of tentative approval thereof, and the right to review should be deemed to have accrued in relation to the earlier date. See Marini v. Borough of Wanaque, 37 N.J. Super. 32, 39-40 (App. Div. 1955). There can be no doubt that if appellant had commenced his action at that point it would not have been considered premature. See Kotlarich v. Ramsey, 51 N.J. Super. 520, 540 (App. Div. 1958). Indeed, appellant's grievances regarding the grants of tentative and final approval, and the township committee's upholding the latter on appeal, constituted in fact only one cause of action. See Marini v. Borough of Wanaque, supra, loc. cit. Clearly, it would not be in the best interests of justice to allow an aggrieved party to sit back for a period which could be as long as three years, allowing a builder and the township to proceed in reliance upon the "freeze provision" of N.J.S.A. 40:55-1.15, and then seek review of the granting of final approval. Almost certainly such a party would be guilty of laches, if nothing else. See ibid., at p. 41.
We hold that one who would challenge the approval of a subdivision plan must do so within the time limits prescribed *275 in R.R. 4:88-15(b)(3), as measured from the publication of notice of the granting by the planning board (or, where applicable, the governing body's approval of a planning board's recommendation) of tentative approval. Compare Home Builders Ass'n of Northern N.J. v. Paramus, 7 N.J. 335, 342 (1951); Marini v. Borough of Wanaque, supra, 37 N.J. Super., at pp. 40-41; Gammond v. Livingston Tp., 53 N.J. Super. 449, 452 (Law Div. 1958).
We are well satisfied that appellant has not shown diligence in his efforts to secure relief, compare Schack v. Trimble, 28 N.J. 40, 48-49 (1958), or any other reason why the interests of justice would require a waiver of the limitations bar. In view of appellant's constitutional argument, however, this appeal does not automatically fail, for in lieu actions brought beyond the time limit prescribed in R.R. 4:88 may be considered when such issues are raised. Schack v. Trimble, supra, 28 N.J., at p. 47; McKenna v. N.J. Highway Authority, 19 N.J. 270, 276 (1955); Catalano v. Pemberton Tp. Bd. of Adjustment, 60 N.J. Super. 82, 96 (App. Div. 1960).
Having (with others) failed in an attack upon the constitutionality of the cluster zoning ordinance, see Chrinko, supra, and having voluntarily withdrawn an appeal from that unfavorable determination, appellant now urges us to hold that the action of the township committee in affirming the planning board's approval of Yenom's amended subdivision plan was "discriminatory, and hence unconstitutional." We deem it appropriate, under the circumstances presented in this particular case, to consider the merits of this claim. We first note briefly, however, two procedural aspects of the proceeding which would normally dispose of plaintiff's appeal without reaching the merits.
While respondents are not precisely correct in their contention that the issues raised below and on this appeal were actually decided by Judge Furman in the Chrinko case, we are satisfied that they are of substantially the same tenor *276 and should have been brought in Chrinko. Appellant has, in fact, split his cause of action.
Moreover, the sole issue pressed on this appeal, that approval of Yenom's amended subdivision plan works a denial of equal protection of the laws, involves, as we shall soon see, an allegation of denial of constitutional rights, not of citizens and taxpayers of the Township of South Brunswick, but of land developers who had not secured tentative approval of a subdivision plan allowing a minimum lot size of 13,500 square feet in an R20 zone. This is the precise and narrow condition to which appellant's brief is confined. Respondents are therefore correct in contending that appellant should be barred from raising this argument under the well settled rule that one who would raise the constitutional rights of a class must be a member of that class. See, e.g., Bode v. Barrett, 344 U.S. 583, 586, 73 S.Ct. 468, 97 L.Ed. 567 (1952); Sprout v. South Bend, 277 U.S. 163, 168, 48 S.Ct. 502, 72 L.Ed. 833 (1927); Jeffrey Mfg. Co. v. Blagg, 235 U.S. 571, 576, 35 S.Ct. 167, 59 L.Ed. 364 (1914). Whether we should regard this rule as merely one of practice, subject to waiver by the court in unusual and compelling circumstances, see Barrows v. Jackson, 346 U.S. 249, 256-257, 73 S.Ct. 1031, 97 L.Ed. 1586 (1952), or whether it involves application of a jurisdictional requirement, see Chief Justice Vinson's forceful dissent in Barrows v. Jackson, supra, 346 U.S., at pp. 263-266, 73 S.Ct. 1031, we need not decide; there are no circumstances present here which militate against applying this salutary principle. Put another way, appellant, who bases his standing squarely on his status as a taxpayer and property owner, has not shown that he is "aggrieved" by the alleged denial of constitutional rights and therefore has no right of appeal from the action of the township committee which assertedly caused such denial. See In re Lazarus, 81 N.J. Super. 132, 136 (App. Div. 1963). Cf. Kozesnik v. Montgomery Tp., 24 N.J. 154, 177-178 (1957).
Furthermore, and in any event, we find appellant's substantive contention to be entirely without merit. He *277 argues that in approving the grant of final approval of Yenom's amended plan the township committee conferred a "special" and "very valuable" privilege upon all land developers who, at the time of the adoption of the cluster zoning ordinance, had received tentative approval and were awaiting final approval of subdivision plans under the original ordinance allowing a minimum lot size of 13,500 square feet. Only these developers (and it appears that Yenom is the only one in this "class"), argues appellant, were enabled to take advantage of the reduction provisions of the cluster zoning ordinance and apply them to lots of 13,500 square feet, while all other land developers were limited to reducing their lots from a minimum size of 20,000 square feet. This, he asserts, violates the equal protection of the laws. While the denial of equal protection may obtain through the conferring of privileges as well as the imposing of burdens, Washington National Ins. Co. v. Board of Review, 1 N.J. 545, 553 (1949), appellant cannot prevail on this argument.
Neither the cluster zoning ordinance nor its application to Yenom and other land developers is discriminatory or violative of equal protection. That constitutional concept is infringed only where persons who are situated alike are not treated alike. Reid Development Corp. v. Parsippany-Troy Hills Tp., 10 N.J. 229, 233 (1952). See also Gundaker Central Motors v. Gassert, 23 N.J. 71, 80 (1956), appeal dismissed 354 U.S. 933, 77 S.Ct. 1397, 1 L.Ed.2d 1533 (1957). Here there is a sufficient distinction between the positions of land developers who, at the time of the adoption of the cluster zoning ordinance, had obtained tentative approval of 13,500 square foot lots and those who had not to accommodate different treatment without infringing equal protection. Compare Wilson v. Long Branch, 27 N.J. 360, 377, certiorari denied 358 U.S. 873, 79 S.Ct. 113, 3 L.Ed.2d 104 (1958). Indeed, the ordinance is completely general and neutral in its terms, stating that "a developer may apply to the Planning Board for permission to reduce lot sizes and donate lands to the Township in accordance with this Ordinance *278 at any time prior to applying for final subdivision approval." The fact that a few private individuals may incidentally benefit from basically nondiscriminatory legislation does not vitiate its validity. See Kozesnik v. Montgomery Tp., supra, 24 N.J., at p. 173.
Whatever advantage may accrue to Yenom by the application of the cluster zoning ordinance to its tentative approval, compare Chrinko v. So. Brunswick Tp. Planning Board, supra, 77 N.J. Super., at p. 604, does not evolve by virtue of this ordinance. It neither creates by its terms nor fosters by its application classifications of land developers. Nor does recognition of a vested right to minimum lot sizes of 13,500 square feet under N.J.S.A. 40:55-1.18 (which right became vested prior to the ordinance raising the minimum lot size to 20,000 square feet and prior to the later cluster zoning ordinance allowing a 20% reduction in lots of 20,000 square feet or less), amount to a violation of equal protection of the laws.
Appellant has not, either below or on this appeal, argued that the basic concept of the cluster-type ordinance involved in this case is violative of our zoning statute. Cf. Chrinko v. So. Brunswick Tp. Planning Board, supra. As indicated above, the infirmity charged is solely the alleged resulting discriminatory classification of land developers. We are therefore not to be understood as expressing any opinion as to whether it is consonant with the zoning statute for a municipality which has zoned a particular residential area for specific minimum lot sizes to provide by ordinance that in return for a donation of land by a developer to the municipality for public purposes, such minimum lot sizes may be automatically reduced by a given percentage, all other land in the same zoning district continuing to be governed by the minimum area specifications fixed by the ordinance. The issue not being presented, we do not pass upon it.
From all of the foregoing we conclude that this appeal is without merit, and that the judgment below must be affirmed.